441 So.2d 429 (1983)
STATE of Louisiana, Appellee,
v.
Linda HALL, a/k/a Phyllis Smith, Appellant.
No. 15581-KA.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1983.
*430 Piper & Brown, Inc. by Frank E. Brown, Jr., Shreveport, for appellant.
Paul J. Carmouche, Dist. Atty., Gary M. Parker and Tommy J. Johnson, Asst. Dist. Attys., Shreveport, for appellee.
Before FRED W. JONES, Jr., SEXTON and NORRIS, JJ.
NORRIS, Judge.
Defendant, Linda Hall a/k/a Phyllis Smith, appeals a jury conviction of attempted public intimidation in violation of La. R.S. 14:122 and 27 and a resulting sentence of one year imprisonment at hard labor, suspended subject to a two year probationary period with a sixty day jail term as a condition of probation.
On February 27, 1982, defendant was arrested for the theft of a pair of shoes from Bevo's Shoe and Dress Store in Shreveport, Louisiana. The store manager notified the security guard employed by the shopping center of the theft and he detained the defendant returning her to Bevo's where Betty Williams, a salesperson working in the shoe department, retrieved the empty shoe box from which the shoes had been removed and showed it to the security guard. Defendant, who had given the name of Phyllis Smith[1] to the arresting *431 officer, was then charged in Shreveport City Court with theft.
According to the testimony presented by the state at trial, on the day following the theft incident, defendant, Beverly Wilson[2] and another black female went in a green Volkswagen to the apartment complex where Ms. Williams resided and proceeded to cause a scene in the parking lot during which they yelled at Ms. Williams threatening to cause her to lose her job. The next morning while Ms. Williams was on her way from her apartment to a nearby bus stop to go to work, she again encountered the same individuals in the same vehicle who would not allow her to cross the street, pointed a gun at her, hollered at her, and again threatened to make her lose her job as well as further threatening to break her legs. Later that same day, phone calls started to Bevo's wherein the caller again threatened Ms. Williams with the loss of her job. Two days later, Ms. Williams observed the same individuals in front of Bevo's where they continued to make similar remarks and otherwise harrass her. Similar incidents occurred over the next few weeks even after March 25, 1982. Although threatened with the loss of her job and physical harm, at no time did anyone ever tell or in any other manner convey to Ms. Williams the message that she should not testify against this defendant in connection with the theft charges in city court.
At her first appearance in court for the purpose of arraignment on the theft charge on March 25, 1982, defendant pled guilty without the benefit of counsel and paid a fine. Thereafter, on April 2, 1982, she was arrested for the instant offense. It is from her conviction that she appeals assigning five errors. Because after our review of the record we have concluded that this conviction and sentence must be reversed, we pretermit discussion of the other assignments of error and address the assignment of error pertaining to the sufficiency of the evidence presented in support of the conviction.
The defendant argues that the state presented insufficient evidence of guilt to convince a rational trier of fact beyond a reasonable doubt that the defendant was guilty of the offense of attempted public intimidation.
La.R.S. 14:122 provides:
Public intimidation is the use of violence, force, or threats upon any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty:

(1) Public officer or public employee.
(2) Grand or petit juror.
(3) Witness, or person about to be called as a witness upon a trial or other proceeding before any court, board or officer authorized to hear evidence or to take testimony.
(4) Voter or election official at any general, primary, or special election.
(5) School bus operator.
Whoever commits the crime of public intimidation shall be fined not more than one thousand dollars, or imprisoned, with or without hard labor, for not more than five years, or both. [Emphasis added.]
Public intimidation is a specific intent crime [State v. Daniels, 236 La. 998, 109 So.2d 896 (1958) overruled on other grounds 129 So.2d 4 (La.1961)]; thus, proof of specific intent is required as an essential element of the crime. Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow the act or failure to act. La.R.S. 14:10.[3] The controlling language *432 contained within La.R.S. 14:122 that requires proof of specific intent is "with intent to influence his conduct...". See State v. Johnson, 368 So.2d 719 (La.1979). [Compare State v. Duncan, 390 So.2d 859 (La.1980), concerning the crime of public bribery.] Thus, the statute requires proof of an intent to produce the consequence of influencing conduct, and in order to have convicted the defendant the state must have proved that the defendant had a specific intent, i.e. actively desired, to influence the conduct of Ms. Williams in relation to her position or duty as a prospective witness in the theft trial.
Attempted public intimidation is a responsive verdict to the crime charged. La.R.S. 14:27 provides:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
B. Mere preparation to commit a crime shall not be sufficient to constitute an attempt; but lying in wait with a dangerous weapon with the intent to commit a crime, or searching for the intended victim with a dangerous weapon with the intent to commit a crime, shall be sufficient to constitute an attempt to commit the offense intended.
C. An attempt is a separate but lesser grade of the intended crime; and any person may be convicted of an attempt to commit a crime, although it appears on the trial that the crime intended or attempted was actually perpetrated by such person in pursuance of such attempt. [Emphasis added.]
Thus, by the very definition of an attempt, specific intent is required to convict of an attempt to commit a crime. In order to attempt to commit a crime an offender must actively desire to cause the specific result required by a particular criminal statute [here influence the conduct of a potential witness] and do or omit an act for
the purpose of and tending directly toward the accomplishing of his object. See State v. Parish, 405 So.2d 1080 (La.1981).
Intent, absent an admission of such by a defendant, must necessarily be proven by inferences from surrounding facts and circumstances. State v. Duncan, supra. In all cases where an essential element of the crime is not proven by direct evidence, La. R.S. 15:438 applies:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
As an evidentiary rule, this statute restrains the factfinder in the first instance, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove and then to convict only if every reasonable hypothesis of innocence is excluded. Whether circumstantial evidence excludes every reasonable hypothesis of innocence presents a question of law. State v. Shapiro, 431 So.2d 372 (La.1982). In applying La.R.S. 15:438, all the facts that the evidence variously tends to prove on both sides are to be considered, disregarding any choice by the factfinder favorable to the prosecution. As a matter of law, the reviewer can affirm the conviction only if the reasonable hypothesis is one favorable to the state and there is no extant reasonable hypothesis of innocence. State v. Shapiro, supra.
In the instant case, there is no direct evidence of an essential element of the crime; that is, whether the defendant acted with the requisite specific intent to influence Ms. Williams in her conduct as a potential witness. Thus, it was necessary that the state prove this element of the crime by circumstantial evidence. The test of the sufficiency of circumstantial evidence is not whether it produces the same *433 conviction as the positive testimony of an eyewitness, but whether it produces moral conviction such as would exclude every reasonable doubt. The proof ought to be not only consistent with the defendant's guilt but inconsistent with any reasonable hypothesis of innocence. State v. Shapiro, supra.
Our review of the record compels us to conclude that the state did not meet its burden in this respect. The only testimony presented on behalf of the state regarding the actual circumstances surrounding the offense came from the victim and the investigating officer. It was the testimony of the victim that at no time did anyone ever warn her not to appear in court or otherwise attempt to influence her actions in connection with her role as a witness in the city court proceeding. The stated intent of the threats, as testified to by the victim, was to cause her to lose her job or to cause her physical harm. The testimony of the investigating officer was that the threats continued even after the defendant had pled guilty to the theft charge in city court. Other evidence clearly establishes that prior to her arrest on the instant charge, the defendant pled guilty to theft at her first court appearance. Considering the facts established at trial, while perhaps it might be concluded that the evidence tends to prove that the defendant acted as she did in order to influence Ms. Williams' conduct as a potential witness, it might equally be concluded that the actions of the defendant were intended to accomplish another purpose, e.g. to punish or get even with Ms. Williams' for her actions in connection with defendant's arrest for theft. Thus, inferences from the proven facts developed at trial do not support a finding of moral certainty of the specific intent required to find guilt of attempted public intimidation. While we are convinced that the evidence was sufficient to prove several other crimes that the defendant may have committed in connection with her behavior toward the victim, the state chose to prosecute her for the crime of public intimidation, and by its own evidence did not exclude the reasonable hypothesis that the defendant acted for purposes of vengeance or retaliation rather than to influence the conduct of the victim in relation to her duty as a potential witness. The facts and circumstances surrounding the incidents complained of coupled with defendant's plea of guilty to the theft charge simply do not lead to an inference that these actions were done with the specific criminal intent to influence within the meaning of La.R.S. 14:122. The evidence is insufficient as a matter of law under La. R.S. 15:438. See State v. Daniels, supra.
Accordingly, because the evidence is insufficient to prove this element of the crime of attempted public intimidation, the defendant's conviction and sentence are reversed and she is ordered discharged. See State v. Shapiro, supra.
CONVICTION AND SENTENCE REVERSED AND DEFENDANT DISCHARGED.
SEXTON, J., dissents with written reasons.
SEXTON, Judge, dissenting.
I respectfully dissent.
In my view, these continuous and violent threats which began immediately after the initial arrest of the defendant and thereafter continued, constituted ample evidence from which the jury could have reasonably inferred and concluded that this defendant was in fact attempting to influence Ms. Williams' testimony.
The holding of this case requires that the State prove as an element of witness intimidation that the defendant expressly communicated to the witness that he must either change or abandon his testimony, or suffer adverse consequences. I do not believe that to be an essential element of the offense. It should be sufficient to prove that the defendant used violence, force or threats upon a potential witness under such circumstances as would enable a juror to reasonably infer that the defendant intended to influence the witness's testimony. In other words, I do not believe it is *434 necessary for the State to prove that the defendant expressly stated, "I'm going to harm you, unless you don't testify or change your testimony."
As the majority opinion notes, specific intent can be established by inferences from surrounding facts and circumstances. It is only necessary that the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act. LSA-R.S. 14:10.1.
The actions of this defendant under the extant circumstances clearly show, from my appreciation of the record, that defendant intended to influence the conduct of Ms. Williams as a witness.
NOTES
[1] The defendant was charged and pled guilty to the crime of theft as Phyllis Smith. However, it was conclusively proven at trial that defendant is the same individual as Phyllis Smith.
[2] Beverly Wilson was charged and tried as a co-defendant in this case. She also was found guilty. However, she has not appealed.
[3] La.R.S. 14:10 provides:

Criminal intent may be specific or general:
(1) Specific criminal intent is that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act.
(2) General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.